HARRIET G. EVANS ET AL v. ABNER HORD.

**Executors and Administrators—Violation of Fiducial Trust—Liability for Loss Thereby.**

An executor, who loans money of his testator, and by a transfer of the note thus taken, secures other notes from different parties, which latter notes prove worthless on account of his dereliction of vigilance, is held liable personally for the loss thus sustained to the estate.

**Same.**

Executors must properly protect the debts due their testators estate and, on a note, of an insolvent, where no attempt is made to properly secure it, or ask for a pro rata allowance out of the assigned property of a surety, or actual demand of the principal, is held to be a violation of the trust.

APPEAL FROM FLEMING CIRCUIT COURT.

April 22, 1869.

OPINION OF THE COURT BY JUDGE WILLIAMS:

A. Parer, deceased, by his last will bequeathed to his sister, Harriet G. Evans, and her children, among other things a debt of $11,000—then in due time by Blackburn secured by mortgage on a Woodford county farm, also a fund in his hands as trustee left by his father to his said sister $2,056.98, all to be put out at interest payable semi-annually, making Abner Hord a trustee and in case of his death S. Girard Hord, trustee, to loan out said funds, and to pay Mrs. Evans the semi-annual interest. By the ninth clause of his will he authorizes his *executors* to continue the loan of eleven thousand dollars to Blackburn at six per cent, but if he shall elect to pay it then the *trustee* may invest it in steel stock or loan it by mortgage on real estate, and appointed Abner Hord his executor.

A debt of $2,247.31 on R. R. Bell and George Jones, his security, being lost by the insolvency of the obligors, which Hord asserts to be part of the trust fund and claimed and got a credit therefore with the county court. Mrs. Evans and her children brought suit averring that this was an imprudent and unsafe investment and that it had been lost by want of proper vigilance:

by Hord and that in the first instance it had been a private debt'
of said Hord and that he had because of its doubtful character
transferred it to the trust fund, and thereby attempted to throw
its loss upon them.   Issues were formed on these pleadings, the
evidence heard and the cause submitted on two isolated questions,
to-wit, whether Hord was responsible for the Bell debt, and
whether he was responsible for more than the legal interest which
he had reported on the Lander debt.

The debt of $11,000 seems to have been collected of Blackburn
soon after the testator's death, which occurred previous to July,
1850.

It is insisted in argument that it was a breach of trust to loan
this fund on any other security than mortgage on real estate, or
to invest it in steel stock; it is sufficient, however, to say that
no such cause of action is alleged or set up in the petition, there-
fore we cannot consider it.

Hord's responsibility for the Bell debt, under these pleadings,
must be confined to the question of reasonable diligence and care
in creating this debt and its management after it was created.

The note of Bell, with George Jones as his security, for $2,000
pricipal is dated September 17, 1861, due at one year.

Another note of same date for $100—due in six months for
the semi-annual interest was executed by them; and another note
for $85 was secured the same day by Bell, alone, due in one year
for the next semi-annual interest.

Hord, in his answer says, he exchanged this note with Early
for a note on Robinson and this latter he exchanged with his son
A. P. Hord, for a note on King, as he says his son had purchased
Robinson's farm and holding King's note he exchanged Robinson's
note with him for it.

It is quite apparent that these exchanges of notes were to benefit
and accommodate his son, A. P. Hord, for if the original invest-
ment was good there could have accrued no benefit to the bene-
ficiaries, but as each exchange complicated the transaction, and if
the trust funds must be held liable for the trustee's assignment,
it thereby becomes endangered.

Jones as early as February 24, 1862, some five months after
said note of Bell to the trustee was secured and before it was
due, made an assignment of his property which seems to have
been barely sufficient to have made this note good, even if he had

owed no other debts, but which were more than sufficient to absorb his property without any *pro rata* to this one, and by the consolidated judgments in the case of Bell's creditors against him it appears that all the attachments sued out February 2, 1863, were made out of Bell's property.

So here is a fiducial debt remaining without security from the date of Jones' assignment, February 24, 1862, until February 3, 1863, with no attempt either to get a *pro rata* allowance out of Jones' property, or demand on the principal, so far as appears, to supply a new security. And if the previous assignment of the note be set up as an excuse for this dereliction of vigilance, it would only show that the assignment itself, by putting it out of the power of the trustee to control it, was a violation of the trust.

We are satisfied from the evidence that Bell was to all appearance a good, safe borrower when this debt was made and so continued up to about the time when his property was attached; his credit seems not to have been impaired until his unexpected and rather eccentric departure from his home, in Fleming county, where he owned a valuable farm of some 400 acres and other large and valuable property; and we have but little doubt that he could and would have supplied Jones' place with a good and valuable security at any time after Jones' assignment had he been called on to do so.

Taking all these transactions together we have no doubt but that Hord should be held responsible for this Bell debt. The trust debt on Robinson remained good and was paid and this shows the injustice of its exchange without any possible profit to the beneficiaries.

As to the usurious interest on the notes of Lander set out in the petition it appears that he escaped from the payment of the usurious part and although Hord had also assigned his notes, yet as the amount was not actually collected but rejected by the court on Lander's appeal we do not see how Hord could be held responsible thereon. But we infer from the pleadings and otherwise that there may have been a previous transaction to these notes copied in the petition in which Mrs. Evans was made to assert her beneficial claim and in which usurious interest was collected because Lander could not or did not sustain his plea, and if so, Hord should be held responsible for this, but all this, now, too vaguely appears for our adjudication, therefore, as to this matter additional

pleadings may be allowed to either party and another reference as to it may be made to the commissioner to ascertain and report thereon.

Wherefore, the judgment is reversed, with directions to adjudge against appellee, Hord, as to the amount of the Bell note for which he obtained a credit with the county court and interest thereon from the time and as of the date of his credit, and for further proceedings as herein indicated.

*Cord, Andrews, Wadsworth, for appellants.*

*Phister, Botts, for appellee.*